```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

ELADIO N. DIEZ,

    Plaintiff,

v.                              Case No: 2:16-cv-1-FtM-29MRM

KATHLEEN LARSON, Sergeant,

    Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court upon Defendant Kathleen Larson's motion for summary judgment (Doc. 46, filed March 31, 2017).[1] Plaintiff has not filed a response in opposition to Defendant Larson's motion, and his time to do so has passed. Accordingly, the motion for summary judgment is ripe for review.

For the reasons given in this Order, Defendant Larson's motion for summary judgment is granted, and this case is dismissed with prejudice.

### I. Background and Procedural History

Plaintiff initiated this action against Defendants Sergeant Kathleen Larson, Warden John Willis, and Florida Department of Corrections Secretary Julie Jones on January 4, 2016 (Doc. 1). In

---

[1] Defendant Larson filed an amended motion on April 2, 2017 (Doc. 47). However, the amended version was not docketed as a motion, and corrected only minor scrivener's errors. Accordingly, to avoid confusion in the docket, the Court will refer to the original motion.

his complaint, Plaintiff generally asserted that, while incarcerated at Charlotte Correctional Institution, he got into a physical altercation with Defendant Larson that resulted in a broken necklace and damage to his lower front teeth. Id.

Upon review of the complaint, the Court determined that Plaintiff had not stated a claim against Defendants Jones or Willis, and these defendants were dismissed from the action (Doc. 13). Plaintiff was given leave to amend his complaint, and he was cautioned that, should he fail to file an amended complaint, this case would "proceed solely upon Plaintiff's excessive force claim against Defendant Larson." Id. Plaintiff did not file an amended complaint, and Defendant Larson filed an answer and affirmative defenses to Plaintiff's complaint on August 5, 2016 (Doc. 23).

The parties were directed to conduct discovery (Doc. 24), and thereafter, Defendant Larson filed her motion for summary judgment (Doc. 66). Plaintiff was directed to file a response to the motion (Doc. 48). He was cautioned that: (1) failure to respond to a motion for summary judgment indicates that the motion is unopposed; (2) all material facts asserted in the motions would be considered admitted unless controverted by proper evidentiary materials; and (3) Plaintiff could not rely solely on the allegations of his pleadings to oppose the motion (Doc. 35) (citing Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985)). Despite the

warnings, Plaintiff did not respond to Defendant Larson's motion for summary judgment.[2]

On July 26, 2017, four and a half months after the close of discovery and three months after he was directed to respond to Defendant Larson's motion for summary judgment, Plaintiff filed a "Motion for Mailroom Privileges," complaining that he has no money for stamps to "get the officer involved in my lawsuit" (Doc. 51). Plaintiff has not sought an extension of the time to conduct discovery, nor did he request an extension of time to respond to Defendant Larson's motion for summary judgment. To the extent Plaintiff attempts to now assert a motion to compel, the motion is denied as untimely. Moreover, a plaintiff, even one proceeding *pro se*, is responsible for his own costs of discovery, and

---

[2] Pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, if a party fails to properly address another party's assertion of fact, the court may consider the fact undisputed for purposes of the motion for summary judgment. Fed. R. Civ. P. 56(e)(2). It was explained to Plaintiff in the Summary Judgment Notice (Doc. 35) that a properly supported motion for summary judgment results in the inability of the plaintiff to rely on his complaint alone. Plaintiff was provided an opportunity for discovery, but offers no evidence or statement in opposition to the defendant's evidence or properly supported statement of material facts. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 161 (1970) ("It has always been perilous for the opposing party [in a motion for summary judgment] neither to proffer any countering evidentiary materials nor file [an opposing affidavit.]"); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986) ("[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery.").

Plaintiff's "Motion for Mailroom Privileges" is denied on that ground as well. Wright v. United States, 948 F. Supp. 61, 62 (M.D. Fla. 1996).

## II. Pleadings

### Complaint

Plaintiff does not provide much detail in his complaint. He asserts that, on January 27, 2013, he was roughly grabbed by the neck and pulled into the "CBS" by Defendant Larson because he refused to acknowledge her after she "disrespected" him (Doc. 1 at 5). As a result, Plaintiff's neck chain was broken. Id. Afterwards, Defendant Larson questioned Plaintiff, and then "rushed" him while holding an identification card, which caused an injury to Plaintiff's lower teeth. Id. at 6.

Plaintiff seeks reimbursement for the damage to his necklace, the repair of his teeth, and monetary damages for mental anguish (Doc. 1 at 6-7). He also asks to be separated from Defendant Larson because she "is bi-polar and very dangerous." Id. at 7.[3]

### Defendant Larson's Motion for Summary Judgment

Defendant Larson asserts that she is entitled to summary judgment because: (1) Plaintiff suffered only a *de minimis* injury; (2) she is entitled to qualified immunity because her actions were reasonable; (3) even if a constitutional violation is shown, Plaintiff

---

[3] Plaintiff's request for injunctive relief has already been dismissed (Doc. 13).

would be entitled to only nominal damages; and (4) there is no evidence to support a claim for punitive damages (Doc. 46 at 1).

To support her motion for summary judgment, Defendant Larson attaches a statement of undisputed facts (Doc. 47-2); Plaintiff's Deposition (Doc. 46-2, "Diez Depo."); Defendant Larson's Interrogatory Responses (Doc. 46-3, "Larson Answers"); Officer Kendra Edison's Deposition (Doc. 47-3, "Edison Depo."); an affidavit of Leslie Rodes (46-5, "Rodes Aff."); Nurse Dorothy C. Woolley's Deposition (Doc. 46-4, "Woolley Dep."); an affidavit from Dentist Thomas Shields (Doc. 46-7, "Shields Aff."); and Plaintiff's Department of Corrections dental records (Doc. 46-7 at 8-80).

### III. Standards of Review

**Summary Judgment Standard**

Summary judgment is appropriate only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The movant may meet this burden by presenting evidence that would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some elements of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322–324.

If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, (1986).

### Excessive Force Standard

Title 42 U.S.C. § 1983 imposes liability on one who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983. To articulate a claim under § 1983, a plaintiff must allege that: (1) a defendant deprived him of a right secured under the Constitution or federal law; and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865,

872 (11th Cir. 1998). The only constitutional claim before this Court is Plaintiff's allegation that Defendant Larson used excessive force against him.

To state an Eighth Amendment claim for the excessive use of force, a plaintiff must allege: (1) conduct by the defendant that was objectively "harmful enough" to establish a constitutional violation; and (2) facts suggesting that that the defendant "act[ed] with a sufficiently culpable state of mind[,]" i.e., she acted "maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 8 (1992).

A significant injury is not required to state an excessive force claim because the "core judicial inquiry" is "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. The extent of a plaintiff's injuries is not, however, irrelevant. The extent of the plaintiff's injuries is a factor that suggests whether an officer believed the force necessary in a particular situation, and it provides an indication of the amount of force applied. See Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (An "inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.")(citing Hudson, 503 U.S. at 9; Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

As noted by the Supreme Court in Hudson, "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. Rather, a court must consider the following factors in determining whether force was applied "maliciously and sadistically" to cause harm: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the extent of the injury inflicted upon the prisoner; (4) the threat to the safety of staff and inmates posed by the prisoner; and (5) any efforts made to temper the severity of a forceful response. Fennell v. Gilstrap, 559 F.3d 1212 (11th Cir. 2009).

## IV. **Analysis**

### Undisputed Facts

Based upon the pleadings and the evidence before this Court, the following facts are undisputed:

> On January 27, 2013, Plaintiff was waiting in the pill line outside the Multipurpose Building at Charlotte Correctional (Plaintiff's Dep. at 66; Larson Answers);
>
> Defendant Larson was monitoring the pill line (Larson Answers);
>
> Plaintiff was leaning against a column and Defendant Larson ordered him to stop (Plaintiff's Depo. at 9, Larson Answers);
>
> Plaintiff did not acknowledge Defendant Larson, and she ordered him to go inside the Multiservice Building (Plaintiff's Dep. at 68-69; Larson Answers at 3);

Plaintiff was either escorted by Defendant Larson into the building, or entered the building on his own (Plaintiff's Depo. at 69; Larson Answers; Edison Dep. at 5, 7);

Officer Kendra Edison witnessed the entire altercation between Plaintiff and Defendant Larson (Edison Dep. at 5, 16);

Inside the Multipurpose Building, Defendant Larson asked Plaintiff to show his identification card ("I.D.") several times, but he refused her orders, and asked her "why?" Edison noticed that Plaintiff's I.D. was not visible when he entered the multipurpose building (Edison Dep. at 9, 10);

Because Plaintiff was being "disorderly" and refused to comply with her orders, Defendant Larson ordered Plaintiff to "get on the wall" so that she could put handcuffs on him (Edison Dep. at 11);

When Defendant Larson ordered Plaintiff to "cuff up" he became hostile and aggressive and refused to place his hands behind his back (Edison Dep. at 13);

Defendant Larson repeatedly told Plaintiff to "stop being disorderly" and the two continued to argue. Defendant Larson attempted to grab Plaintiff's arm to place behind his back and he continued to refuse (Edison Dep. at 14);

After Defendant Larson told Plaintiff several times that he was being disorderly, she used chemical agents on him and Officer Edison immediately called for back-up (Edison Dep. at 14);[4]

The responding officers were able to force Plaintiff into handcuffs and escort him to his pre-confinement physical (Edison Dep. at 18);

---

[4] In his complaint, Plaintiff does not mention Defendant Larson's use of chemical agents, and he does not assert that he predicates any excessive force claim on the use of chemical agents.

Officer Edison never saw Defendant Larson punch Plaintiff or shove an I.D. card in his mouth even though she witnessed the entire altercation that caused chemical agents to be administered (Edison Dep. at 19);

Officer Edison feared for Defendant Larson's personal safety during the incident because Plaintiff was much larger and taller than Defendant Larson (Edison Dep. at 14-17);

After Plaintiff showered to rinse off the chemical agents, he was taken to the medical department for a post use-of-force physical where he was examined by Nurse Dorothy Woolley (Rodes Aff. at 20-21; Woolley Dep. at 13);

Nurse Woolley observed no bleeding on Plaintiff—only redness to the skin of his right knee. She did not see injuries to Plaintiff's neck and noted "zero" injuries or bleeding in Plaintiff's mouth (Woolley Dep. at 44-45);

Nurse Woolley determined that Plaintiff needed no further treatment (Woolley Dep. at 20);

Plaintiff received a disciplinary report for disobeying Defendant Larson's orders. He was found guilty and sentenced to thirty days in disciplinary confinement (Doc. 46-5 at 9; Rodes Aff.);

Plaintiff never declared a dental emergency, nor requested dental sick call regarding the incident complained of in his complaint. Although he was treated by dental staff on four occasions in the year following the incident, none of the providers noted any evidence of injury to Plaintiff's mouth (Shield's Aff. at ¶¶ 25, 26);

Plaintiff's teeth do not presently show evidence of tooth fracture or bone damage, nor do the teeth or gums show evidence of former trauma to the front bottom teeth (Shield's Aff. at ¶¶ 31-36, 41-42, 45).

**Due Process**

It is unclear from the pleadings and the summary judgment evidence when or how Plaintiff's necklace was broken. Nevertheless, Plaintiff has not stated a constitutional claim in this regard because he has an adequate post-deprivation remedy under state law. See Hudson v. Palmer, 468 U.S. 517, 533 (1984); Parratt v. Taylor, 451 U.S. 527 (1981) (overruled on other grounds by Daniels v. Williams, 47 U.S. 327 (1986)). Under Florida law, Plaintiff can sue the officer for the conversion of his personal property. See Case v. Eslinger, 555 F.3d 1317, 1331 (11th Cir. 2009) (citing E.J. Strickland Constr., Inc. v. Dep't of Agric. & Consumer Servs. of Fla., 515 So.2d 1331, 1335 (Fla. 5th DCA 1987)). Accordingly, Defendant Larson is entitled to summary judgment on any due process claim based upon Plaintiff's broken necklace.

**Excessive Force**

To determine whether the force used by Defendant Larson when she struck Plaintiff with his I.D. card was such that it "shocks the conscious," and violated Plaintiff's Eighth Amendment rights, the Court will address the factors set forth in Fennell v. Gilstrap.

### *i. The need for the application of force*

Plaintiff asserts that Defendant Larson "rushed" him while holding his I.D. card and that she stuck the card in between

Plaintiff's front bottom teeth (Doc. 1 at 6). The undisputed evidence shows that, after Defendant Larson told Plaintiff he would receive a disciplinary report due to his failure to obey her orders, he began to argue with her (Larson Int. at 2; Plaintiff Depo. at 10; Edison Depo. at 11). Plaintiff became hostile and physically aggressive towards Defendant Larson when she attempted to put him into restraints (Edison Depo. at 11-14; Larson Int. at 3; Plaintiff Depo. at 10, 80). Plaintiff was much taller and larger than Defendant Larson, and Officer Edison feared for Defendant Larson's safety (Edison Depo. at 15-16). After struggling with Plaintiff, Defendant Larson employed the use of chemical agents to subdue him (Edison Depo. at 14; Larson Int. at 2-3).

Under the undisputed facts presented here, it was reasonable for Defendant Larson to believe that force was necessary to restrain Plaintiff after he became hostile and aggressive when she tried to handcuff him. See Tate v. Rockford, 497 F. App'x 921, 924 (11th Cir. 2012) (prisoner's threats coupled with his refusal to obey prison guard's order made use of force necessary); Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990) (when prisoner created a disturbance by failing to following the prison guard's instructions and shouting obscenities, it was not unreasonable for prison guard to grab the prisoner by his throat and shove him against the prison bars).

### *ii. The relationship between the need and the amount of force used*

As noted, the undisputed evidence shows that after being informed he would receive a disciplinary report for disobeying Defendant Larson's orders, Plaintiff became hostile and struggled with Defendant Larson while she attempted to apply handcuffs. Defendant Larson was holding Plaintiff's I.D. card in her hand during the struggle. When Defendant Larson was unable to subdue Plaintiff, she deployed chemical agents.[5] The undisputed facts suggest that the particular force at issue in this complaint—grabbing Plaintiff's arm to force him into handcuffs—was neither malicious nor sadistic, but rather "a good faith effort to maintain or restore discipline in a difficult situation." Fennell v. Gilstrap, 559 F.3d 1212, 1219 (11th Cir. 2009) (citing Cockrell v. Sparks, 510 F.3d 1307, 1312 (11th Cir. 2007)).

Moreover, immediately after force was used against Plaintiff, a response team was called, Plaintiff was decontaminated, and a physical exam performed eight minutes later (Doc. 46-6). Accordingly, any force used was short-lived; suggesting a conclusion that the force was appropriately calibrated to the threat posed by Plaintiff.

---

[5] As noted, only the alleged excessive force used by Defendant Larson when she allegedly used Plaintiff's I.D. card as a weapon, not Defendant Larson's decision to use chemical agents when Plaintiff refused to submit to handcuffs, is at issue in this action.

### *iii. The extent of the injury inflicted*

Defendant Larson has offered undisputed evidence that the only injury noted during Plaintiff's post use-of-force exam was some skin redness on his lower legs (Doc. 46-6 at 45; Woolley Depo. at 11). Plaintiff was not bleeding, and he required no bandage. Id. Nurse Woolley did not observe any injury to Plaintiff's mouth (Woolley Depo. at 21). In fact, Nurse Wooley wrote in her notes, "Dental check, zero injury noted, opens and closes mouth without discomfort, all teeth appear intact, zero bleeding noted to his mouth or to the gums." Id. at 37.

Moreover, Defendant Larson has shown that no medical evidence suggests that Plaintiff has suffered any past trauma to his front teeth. Defendant does not dispute Defendant Larson's medical evidence. Dr. Shields attests that trauma to teeth does not generally contribute to bone or tooth loss unless the trauma caused a fracture of the bone or displacement of a tooth (Shield's Aff. at ¶ 17). However, Dr. Shields attests that "there is no evidence of any type of alveolar fracture (tooth fracture), or damage to [Plaintiff's] bone other than bone loss due to periodontal disease." Id. at ¶ 34. Dr. Shields further notes that Plaintiff's "teeth and gums do not show any sign of blunt force trauma to the lower front aspect; nor was any trauma noted by any treating dentist." Id. at ¶ 42. Dr. Shields concludes that, had the incident alleged in the Complaint occurred as Plaintiff

described, "Inmate Diez would likely experience bleeding and swelling of the gingiva and significant looseness of his mandibular anterior teeth." Id. at 44.

Attached to Dr. Shields' affidavit are Plaintiff's dental records (Doc. 46-7 at 8-80). The records show that Plaintiff has never complained of tooth trauma to any treating dentist, despite having visited dentists on several occasions since the alleged incident. Specifically, in the year after the incident, Plaintiff submitted one sick call slip and three inmate requests, "none of which contained any mention of trauma to the gums, bone, or teeth, nor looseness of the front lower teeth." (Shields Aff. at ¶ 25). Neither of the dentists who treated Plaintiff in the year after the incident noted any evidence of injury to Plaintiff's mouth. Id. at ¶ 26.

As noted, the core inquiry in an excessive force claim is not the quantum of injury sustained; however, the extent of an injury provides an indication of the amount of force applied. Wilkins, 559 U.S. at 37. In the instant case, the lack of any detectable dental injury by Plaintiff suggests that only a modicum of force was used.

### iv. *The extent of the threat to the safety of staff and inmates*

Plaintiff has not disputed the deposition statements from Officer Edison that he became disorderly after Defendant Larson

ordered him to cuff up.[6]  Kendra Edison attests that Defendant Larson was alone with Plaintiff in the multi-purpose building, and he is much larger than she is (Edison Depo. at 15).  He resisted with physical force Defendant Larson's attempts to restrain him. Id. at 14.  When watching the altercation, Edison believed that Plaintiff posed a threat to Defendant Larson's safety.  Id. at 15. The undisputed facts offered by Defendant Larson suggest that it was reasonable for Defendant Larson to believe that Plaintiff posed a threat to her safety if he remained unrestrained and that she used reasonable force to restrain him.

> ***v. Any efforts made to temper the severity of a forceful response***

Immediately after Plaintiff was ultimately restrained by Defendant Larson with the use of a chemical agent, officers were summoned to escort Plaintiff to a post use-of-force medical exam (Edison Depo. at 19).  In Cockrell, the Eleventh Circuit determined that the fact that officers immediately summoned

---

[6] When asked to explain what she meant when she described Plaintiff as "disorderly," Edison stated:

> Disorderly as in still asking why, still refusing to show the ID, you know, refusing to get on the wall as Sergeant Larson told him to.  And he, he, I mean once she put him, when he finally got on the wall, she directed him to put his, you know, when we put him on the wall, spread your arms out, spread your feet, you know, and he refused those orders.

(Edison Depo. at 11).

medical assistance for an injured inmate was strong evidence that there was no malicious or sadistic purpose in the use of force. 510 F.3d at 1312. Likewise, the immediate offer of medical assistance to Plaintiff shows an effort to temper the severity of the force used by Defendant Larson. See Fennell, 559 F.3d at 1220.

The undisputed evidence shows that the force used against Plaintiff was akin to the "push or shove" described in Wilkins and held to be insufficient to support an excessive force claim. 559 U.S. at 37. No rational juror could find that the force used against Plaintiff by Defendant Larson shocked the conscience or was not applied in a good faith effort to maintain discipline. Hudson, 503 U.S. at 7. Accordingly Defendant Larson is entitled to summary judgment on Plaintiff's excessive force claim. Because this conclusion disposes of the case, the Court will not address Defendant Larson's remaining arguments regarding her entitlement to summary judgment.

## V. Conclusion

In accordance with the foregoing, it is hereby **ORDERED**:

1. Plaintiff's "Motion for Mailroom Privileges" (Doc. 51) is **DENIED**.

2. Defendant Larson's motion for summary judgment (Doc. 46) is **GRANTED**. With no remaining defendants or claims, this case is dismissed with prejudice.

2. The **Clerk of Court** is directed to terminate any pending motions, close this case, and enter judgment in favor of the defendants.

**DONE** and **ORDERED** in Fort Myers, Florida on this __1st__ day of August, 2017.

*/s/ John E. Steele*
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: All Parties of Record